## Wheeler v. Board of Com'rs of City of Hopkinsville.

(Decided Oct. 21, 1932.)

390

JOHN C. DUFFY for appellant.

JAMES BREATHITT, Jr., and GEORGE W. MEUTH for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

At its 1926 session the General Assembly of this commonwealth enacted chapter 133 on page 647 of the Session Acts for that year. It created a plan whereby cities of the second, third, and fourth classes in this commonwealth might acquire a waterworks system by issuing its bonds and pledging only the revenues to be derived from the acquired utility, and the plant itself, for the payment of interest on the bonds, and for their final redemption. It expressly provided that none of the general revenue of the city should be devoted to the payment of either principal or interest of the bonds that might be issued, nor should the municipality in any manner be obligated therefor. By implication, possibly the city would be obligated to expend the proceeds of the bond issue for the acquisition of the utility and to supervise and manage its operation after its acquisition in a manner to derive revenue from which, according to the apportionment thereof, the interest and the principal of the bonds should be met when due, and also to fix a sufficient rate for the service, to maintain the operation of the plant, its repairs, for proper extension, and to raise sufficient revenue to pay the bonds and interest as indicated. But no financial obligation was provided for by the municipality, and, of course, when the bonds should finally become extinguished, the lien against the plant would be released and the city become the owner thereof.

In 1930 the Legislature enacted chapter 92, p. 331,

of the Session Acts of that year. Its title refers to the 1926 act and to *its* title, and states that the 1930 act was for the purpose of inserting in the 1926 one, in certain designated sections, the words "fifth and sixth," so as to make the provisions of the original 1926 act applicable to cities of the fifth and sixth classes, as well as to those of the second, third, and fourth classes, as originally enacted. Such changes in the 1926 act by the 1930 one are the only ones intended to be made in the prior act, as is expressly indicated in the title of the latter. However, the 1930 act re-enacted in hæc verba the 1926 one, with the insertion at the appropriate places of the words "fifth and sixth," thus making the two acts identical, with the exception that the latter one embraced fifth and sixth class cities as well as those of the second, third, and fourth classes.

At its 1932 legislative session the General Assembly enacted chapter 109, page 552, of the Session Acts of that year, the title to which reads: "An act to amend and re-enact Sections 1, 2, and 19 of an act entitled, 'An Act to authorize cities of the second, third and fourth class, to acquire water works and to issue bonds, therefor, payable from the revenues of such works,' being Chapter 133 of the Acts of the General Assembly of 1926, so as to extend the provisions thereof to include the acquisition of sewerage systems within said cities." The body of that act amends and reenacts the sections of the 1926 act, referred to in the title, by incorporating therein the additional public utility of *sewerage* plants, thereby enabling cities of the second, third, and fourth classes to acquire such utilities under the same plan provided for the acquisition of a waterworks system as created by the 1926 act. No reference to or mention of the 1930 act is made in the 1932 one, either in its title or in its body, and which indicates one of two things: (a) Either that the Legislature entirely overlooked it; or (b) that its members were convinced that the 1930 act did not repeal the 1926 one, and that it did not intend to extend the privilege and authority to cities of the fifth and sixth classes to acquire sewerage systems under the indicated plan.

The city of Hopkinsville, Ky., is one of the third class, and its legislative body enacted an ordinance for the acquisition of a sewerage system within that city under the plan authorized by the 1926 act, as amended by the 1932 one. The ordinance excludes the incurring

of any pecuniary liability of the city for the redemption of the proposed bonds, or the payment of any interest thereon, by expressly so providing both in the ordinance and the bond proposed to be issued. Both of them expressly provide that such obligations shall be discharged only with the revenues to be derived from the operation of the plant, and further prescribes that the city itself shall pay for its use of the sewers when constructed the same rates as any of its citizens. But neither the city nor any of its citizens are obligated to accept the service of the sewerage system, leaving both of them the option to decline to do so. Therefore both the city as well as any citizen thereof become obligated to pay the rates only for the time that either of them takes advantage of the benefit.

Before any of the contemplated bonds were issued, this declaratory judgment action was filed in the Christian circuit court by appellant, a citizen and taxpayer in the city of Hopkinsville, Ky., against its board of commissioners and the members thereof to test the legality of the contemplated action. In the petition it was averred that the 1932 act was invalid because, as alleged, it violated in a number of named particulars the provisions of section 51 of our Constitution, and, further, that the 1926 act (three sections of which were amended by the 1932 one) was repealed by the 1930 act, and that the sections of the 1926 act not amended by the 1932 one were not in force when the latter act was passed. From that premise it is contended that, since they embraced the set-up and machinery constituting the plan by which such public utilities might be so acquired, they could not be incorporated into the 1932 act and become a part of it, which, if not done, leaves the latter act as a mere skeleton without the provision for the plan whereby the city of Hopkinsville proposed to acquire its sewerage system, but which it is admitted would not have been so if the 1932 act had purported to amend the 1930 one. The court sustained defendant's demurrer filed to the petition, and it was dismissed on plaintiff declining to plead further, and from that judgment he prosecutes this appeal.

Some of the complaints against the 1932 act, as being in violation of section 51 of our Constitution, are expressly abandoned by counsel in his brief filed in this court, and those still contended for have been carefully examined by us, and we do not regard them

as meritorious, chief among which are that the 1932 act makes no attempt to amend the title to the 1926 one, and that none of the sections of the 1926 act except 1, 2, and 19 are referred to or dealt with, by the 1932 act; it being insisted that for the latter to be valid it should have re-enacted all the other sections of the 1926 act. We have frequently held, with no opinion to the contrary, that a section of our published statutes, Carroll's Edition, or a section of an act of the Legislature as contained in its published session acts, may be amended by referring to it alone in the title of the amendatory act, and that other parts of the amended statute or other sections thereof which are not referred to in the amendatory act would still remain in force and unaffected by its enactment. The basis for such conclusion so arrived at in those opinions was because no express or clearly implied inhibition against such legislative procedure was to be found in our Constitution, and that such amendments clearly indicated an intention and purpose on the part of the Legislature to continue in force the other sections of the amended statute (or of the compiled ones) not referred to in the amendatory act, and that, therefore, no implied repeal of any other section could be declared, unless the amended section, after its re-enactment incorporating the new material, was plainly in conflict with some other section not referred to in the act. We therefore conclude, without further extending the opinion, that the objections to the 1932 act as being in any particular in violation of section 51 of our Constitution are without merit and cannot be sustained.

There remains to be considered and determined the other objection to the validity of the 1932 act as it applies to the acquisition of sewerage systems by cities of the second, third, and fourth classes; i. e., that the 1930 act by re-enacting in hæc verba the 1926 one (except cities of the fifth and sixth classes were included therein) repealed the latter act, and that its provisions were not revived by the reference made thereto in the 1932 act, and which contention we regard as the only one in the case possessing possible materiality. In approaching its solution under the facts of this case, it is essential that we should keep constantly in mind the supreme prevailing rule for the interpretation of statutes, as well as constitutional provisions, and which is: That the intention and purpose of their framers in enacting and prescribing them constitutes the chief high-

way to be traveled by the courts in construing and administering them. That intention, when ascertained through the proper channels, must be enforced and upheld, unless, in case of a statute, it contravenes some express or plainly implied provisions of the Constitution.

The sources from which such intention and purpose are to be gathered are primarily the words employed, and, if they are ambiguous, or even apparently contradictory, resort may be had to the title of the statute, which is an index to the subject-matter to be dealt with, and, in case of a constitutional provision, the subject-matter under consideration by the convention that framed it may likewise be taken into consideration. Also in both constitutional provisions and statutes the intention and purpose of the body creating them may in such doubtful contingencies be arrived at by consulting the journals of their proceedings and thereby ascertain the thoughts and expressed intention of the numbers of the body when the involved matter was under consideration. Of course, the purpose and intention above referred to may not be established by parol testimony or other evidence dehors the journals containing the proceedings of the body that brought into existence the particular law under consideration. We have no trouble in this case in concluding that the intention and purpose of the 1932 Legislature in enacting the act, supra (chapter 109 of the acts of that year, and now under consideration), was to preserve all the provisions of the 1926 act (whereby the created scheme for the obtention of *waterworks* plants in cities of the second, third, and fourth classes might be obtained in the manner provided), and to confer upon such cities the right to acquire under the same plan the additional utility of a sewerage system, and at the same time to withhold from cities of the fifth and sixth classes the power and authority to so acquire the latter utility. It was for that reason no doubt (which is the second one (b) mentioned above) that it referred to the 1926 act in the 1932 one instead of to the 1930 act, which, as we have seen, is but a re-enactment of the 1926 one.

It is thus shown that the 1932 Legislature regarded both the 1926 and the 1930 acts as in force, the one applicable to cities of the second, third, and fourth classes only; while the latter applied to them and also

to fifth and sixth class cities. Since, therefore, it was not the intention and purpose in enacting the 1932 amendment to confer the power and authority upon the latter two classes of cities to acquire sewerage systems, it merely added to the power and authority of the classes of cities contained in the 1926 act to acquire waterworks so as to embrace the acquisition of sewerage systems for those classes of cities under the same plan.

We had before us the interpretation of the acts here involved in the case of Williams v. City of Raceland, 245 Ky. 212, 53 S. W. (2d) 370. The question there involved was the right of the city of Raceland, a city of the fifth class, to acquire a waterworks system under the power conferred by the 1926 act as amended by the 1930 one, and the plaintiff therein, who opposed the project, contended that the 1932 act repealed the 1930 one. We held otherwise, and in doing so said: "It is also a guiding rule of courts in the interpretation of statutes, as well as other written documents, to search for the intention of those who brought them into existence, which in the case of a statute is the legislature, and adopt that intention. In doing so the purpose to be accomplished by the enactment of the statute may not only be considered but it is a potent fact in arriving at the proper interpretation. In considering and disposing of a similar situation this court in the case of Neutzel v. Ryans, 184 Ky. 292, 211 S. W. 852, in announcing the principle that the intention of the legislature if ascertainable, should prevail, even over the words it employed, said: 'The reason for the enactment must enter into its interpretation, so as to determine what was intended to be accomplished by it. The purpose is to give effect to the legislative intent. The will of the legislature, not its words, is the law.' "

Measured by the familiar rules referred to (and which could be fortified by numerous opinions from this and other courts, as well as text-writers), our next task is to determine whether the 1930 act repealed or substituted itself for the 1926 one so as to render the latter no longer in force. We have seen from the recent Williams Case, and the one of Neutzel v. Ryans, 184 Ky. 292, 211 S. W. 852, 854, therein referred to, that "the will of the Legislature, not in words, are the

law," and which raises the further question whether the Legislature by the enactment of the 1930 act "willed" and intended to repeal the 1926 one. If not, then the two acts are coexistent, the provisions of the one applying exclusively to cities of the second, third, and fourth classes, while those of the other apply to those classes of cities and also to those of the fifth and sixth classes. There is certainly no express repeal of the 1926 act contained in the 1930 one. It does not include the usual clause "all acts inconsistent herewith are hereby repealed," since that provision is conspicuously absent therefrom. Therefore, if it repealed the 1926 act, it necessarily did so by *implication,* which method is not favored, and will never be decreed, unless the terms of the alleged repealing statute and the prior one are so inconsistent and irreconcilable as that both of them cannot coexist.

Mr. Sutherland in his work on Statutory Construction, volume 1 (2d Ed.) sec. 258, in stating that rule, says: "The cases are very numerous in which an important question is decided upon the general principle that a statute without negative words will not repeal existing statutes unless there is an unavoidable repugnancy." Late cases from other jurisdictions to the same effect are to be found in People v. Marxhausen, 204 Mich. 559, 171 N. W. 557, 3 A. L. R. 1505, State v. Wetz, 40 N. D. 299, 168 N. W. 835, 5 A. L. R. 731, City of Madison v. Southern Wisconsin Ry. Co., 156 Wis. 352, 146 N. W. 492, 10 A. L. R. 910, Pabst Corp. v. City of Milwaukee, 190 Wis. 349, 208 N. W. 493, 45 A. L. R. 1164, City of Tombstone v. Macia, 30 Ariz. 218, 245 P. 677, 46 A. L. R. 828, and other cases to be found on page 2302 of volume 2 of the Digest to the A. L. R. reports. To the same effect are the late domestic cases of State Insurance Board of Kentucky v. Greene, 185 Ky. 190, 213 S. W. 218; Neutzel v. Keller, 205 Ky. 340, 265 S. W. 817; Schultz v. Ohio County, 226 Ky. 633, 11 S. W. (2d) 702; Panke v. City of Louisville, 229 Ky. 186, 16 S. W. (2d) 1034; and in the case of Loran v. City of Louisville, 11 Ky. Op. 723, 4 Ky. Law Rep. 257, it was held in substance that a statute is not repealed by implication, unless there is such a positive repugnance between its provisions and those of the alleged repealing one "that they cannot stand together or be consistently reconciled." That rule is of universal application, and, so far as we have

been able to find, is without exception. That being true, we conclude that the Legislature in enacting the 1930 act did not intend, nor was it its will, to repeal the 1926 act, nor to substitute the former for the latter, except to the extent of extending the terms of the prior one to cities of the fifth and sixth classes.

We have so far dealt with the question of *implied* repeal, during the progress of which we have pointed out that the 1930 act contained no express repealing provision of the 1926 one, or any prior statute dealing with and authorizing the acquisition by the designated municipalities of a water works system, whether contained in the charters of such cities or otherwise. But an examination of the 1930 statute reveals that its section 19 contains this express language: "This act shall be deemed to create an additional and alternate method for the acquisition of water works by any city of the first, second, third, fourth, fifth or sixth class *and shall not be deemed to include, alter, amend or repeal any other statute.*" (Our italics.) Acts 1930, c. 92.

We interpret the italicized portion of the excerpt as an expression of the will, purpose, and intent of the Legislature to preserve and continue in force *all* prior statutes containing provisions for the acquisition of waterworks systems by any of the cities in the commonwealth. Such conclusion is clearly to be drawn from the emphasized language, although it might also be argued that it was only meant thereby to preserve and keep in force all prior statutes whereby a city of any class might acquire a waterworks system from the general public revenue *derived from taxation,* and not to preserve any prior statute exclusively providing for the acquisition of such a system solely through the appropriation of revenue to be derived solely therefrom. But the latter conclusion would be in the face of the excerpt taken from section 19 of the 1930 act. It is a strained one, and, at best, is only a possible and remote one. Its adoption would tend to nullify the 1932 act giving the right to construct sewerage systems, as is proposed by the city of Hopkinsville in this case; while a construction of the language of the excerpt according to its plain and unambiguous terms would result in sustaining the validity of the 1932 act, and which we are admonished is our mandatory duty, under the rule that, where a statute is susceptible to more than one interpretation, it is the duty of the court to

adopt the one that will sustain its validity in preference to another that would nullify it.

So construing the 1930 act, we find that by its express terms the legislature in enacting it expressly retained all prior statutes (including the 1926 act), relating to the acquisition of waterworks systems by all classes of municipalities. That being true, the 1932 act properly incorporated within its terms the mode, method, and plan of the 1926 one by which cities of the second, third, and fourth classes might acquire sewerage systems as they were empowered to acquire waterworks systems under the 1926 act.

In the case of Williams v. City of Raceland, supra, we pointed out that, if the municipality, under its ordinance and plan for the acquisition of the proposed utility, obligated and bound itself to continue to use the system throughout the period for the redemption of the bonds, then it would be contracting a debt for the aggregate charges for such service during that entire period, and, if that aggregated amount exceeded the revenue provided for the year in which the contract was made, it would be in violation of section 157 of the Constitution under the interpretation announced in the case of Beard v. City of Hopkinsville, 95 Ky. 239, 24 S. W. 872, 15 Ky. Law Rep. 756, 23 L. R. A. 402, 44 Am. St. Rep. 222, and other cases following and approving it.

But, if the ordinance and the plan only obligated the municipality to pay for whatever service it voluntarily appropriated from time to time without any obligation to continue such appropriation, then the only debt that would be created would be that incurred for the time during which the service was rendered. We have examined the ordinance in this case, as we did in the Williams one, supra, and have concluded that there is nothing contained therein, nor in any of the provisions of the proposed bonds, requiring the city of Hopkinsville to continue its use of the sewerage system for any definite period, leaving it to do so for such time or times as it sees proper, and for which reason no invalid debt is created under the principles of the Beard opinion so as to prevent the carrying out of the proposed scheme.

We also pointed out in the Williams opinion that neither chapter 22 nor 23 of the Session Acts of 1932

applied to the issuing of bonds such as are here proposed, even if both of those chapters were valid, since their provisions apply only to bonds that are the direct obligations of the municipality issuing them, and payable from its treasury replenished by its public revenues. However, it was further pointed out in that opinion that chapter 23 of the 1932 act was held by us to be unconstitutional in the case of Fox v. Boyle County, 245 Ky. 29, 53 S. W. (2d) 192, and which rendered it inapplicable in any event.

For the reasons stated, we conclude that the judgment rendered by the trial court was and is proper, and it is affirmed.

The whole court sitting, except Willis, J., who was absent.

Dietzman, C. J., dissents.