**CITY OF RUSSELL, Kentucky, a Municipal Corporation, Appellant,**

v.

**CITY OF FLATWOODS, Kentucky, a Municipal Corporation, Appellee.**

Court of Appeals of Kentucky.

Oct. 15, 1965.

J. W. McKenzie, A. W. Mann, Ashland, for appellant.

J. G. M. Robinson, Ashland, Frank K. Warnock, Greenup, for appellee.

WADDILL, Commissioner.

By this action the appellee, City of Flatwoods, seeks to judicially establish the validity of a contract which it allegedly entered into with appellant, City of Russell, providing for the latter's use of certain sewage disposal facilities to be constructed, operated and owned by Flatwoods. The trial court held that the contract is a valid one and entered judgment requiring both cities to perform its terms.

Russell appeals urging for reversal of the judgment that the contract is invalid because it contravenes Sections 159, 162, 164 and 179 of the Constitution of Kentucky and because it was not lawfully executed. Russell further urges that, if the contract were valid, its terms were abrogated by Flatwoods thereby excusing performance by Russell.

Flatwoods and Russell are cities of the fourth class and are located in Greenup County near the south bank of the Ohio River. Prior to July 18, 1960, neither of these cities had a sewage treatment plant. In order to lawfully and properly dispose of sewage certain officials of these cities agreed upon a plan whereby Flatwoods would build the necessary facilities and finance their construction by the sale of revenue bonds. It was further agreed that Russell's sewage would be collected through a trunk line constructed by Flatwoods and that Russell would pay Flatwoods, over a period of twenty years, a monthly sum to be determined by the

amount of Russell's sewage that was collected and treated by Flatwoods' facilities.

After these cities had purportedly enacted appropriate ordinances authorizing their mayors to sign the proposed contract, and after Flatwoods had spent approximately $190,000, constructing the sewage facilities, the officials of Russell refused to honor and perform the contract that they entered into. We consider the grounds upon which this refusal is based.

■ It is contended that the contract (and the ordinance authorizing Russell's mayor to execute it) violates Section 159 of the Constitution of Kentucky because Russell failed to levy an annual tax for the raising of funds to pay for the costs incurred under the contract. This contention is without merit because, as we construe the contract, it does not create an indebtedness in violation of Sections 157, 158 and 159 of our State Constitution. Russell has not and will not be required to issue any bonds or to make an appropriation of public funds to finance its obligation under the contract. To the extent that Russell is required to collect and pay to Flatwoods a monthly service charge from the individual users of the sewage facilities, there is no commitment of public funds. The only sum Russell will be required to pay Flatwoods from public funds is an undisclosed monthly amount for the treatment of sewage from its city-owned buildings. In Francis v. City of Bowling Green, 259 Ky. 525, 82 S.W.2d 804, we found no constitutional objection to an arrangement such as this.

■ It is contended that the contract (and the Russell Ordinance) violates Section 164 of the Kentucky Constitution because it awards Flatwoods a franchise.

In Louisville & Jefferson Co. M.S.D. v. Town of Strathmoor Village, 307 Ky. 343, 211 S.W.2d 127, we upheld the validity of a sewage disposal contract between Louisville and two six-class cities. Therein we recognized that the construction and maintenance of public sewers is a governmental function for which public funds could be expended. (Also see KRS, Chapter 58). In rejecting the claim that the contracts granted a franchise we stated:

"* * * The contracts involved have some of the attributes of a privilege, but the rights conferred do not have the character of a franchise. * * * The contracts are mutually advantageous to the three municipal corporations. They have added no appreciable burden. They constitute mere rental of a surplus facility. * * *.

"We, therefore, hold that these contracts do not violate Section 164 of the Constitution."

■ It is argued that if this contract is approved, Russell would become a stockholder in the corporate affairs of Flatwoods and would lend its credit to Flatwoods in violation of Section 179 of the Kentucky Constitution. There is absolutely no basis for this assertion. Under the contract Flatwoods is to issue and sell its own revenue bonds and construct, own and operate the sewage facilities. The only financial obligation that Russell incurs is in payment for benefits received by it from the use of the Flatwoods' facilities. The argument in support of this contention deserves no further consideration. See Norvell v. City of Danville, Ky., 355 S.W.2d 689; Bennett v. City of Mayfield, Ky., 323 S.W.2d 573; Faulconer v. City of Danville, 313 Ky. 468, 232 S.W.2d 80.

■ It is contended that, even though the mayor of Russell signed the contract with Flatwoods, this was ineffectual since the city ordinance authorizing Russell's mayor to sign the contract was not signed by him. The short answer to this is that the ordinance was validly enacted without the mayor's signature since he did not return the ordinance to the city clerk with his written objections within ten days after its passage. KRS 86.090(3). It is our opinion that the ordinance was lawfully enacted.

 It is finally contended that Flatwoods abrogated the contract when it authorized the sale of 30-year revenue bonds rather than 20-year bonds as Flatwoods had originally intended. Since Russell incurred no obligation in respect to these bonds, and since the term of the bonds was not a part of the contract, there is no merit in this contention.

The judgment is affirmed.